**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN O'SHEA,

      Plaintiff - Appellant,

v.

ANTHONY J. WELCH; AMERICAN
DRUG STORES, INC., doing business
as Osco Drug,

      Defendants,

AMERICAN MOTORISTS
INSURANCE COMPANY (Kemper
Casualty Insurance Companies),

      Garnishee - Appellee.

No. 03-3159
(D. Kansas)
(D.Ct. No. 01-CV-2336-JWL)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

John O'Shea filed a negligence claim for damages against Anthony J. Welch and American Drug Stores, Inc., doing business as Osco Drug (Osco), based on injuries he sustained when the car he was driving was struck by Welch's vehicle. Farmers Insurance Company (Farmers), O'Shea's underinsured motorist carrier, intervened. At the time of the accident, Welch, an Osco store manager, was driving from his store in Lee's Summit, Missouri, to the Osco District Office in Overland Park, Kansas, to deliver Kansas City Chiefs tickets, which were obtained from an Osco vendor, for distribution among Osco managers. En route, Welch made a "spur of the moment" decision to turn into a service station for repair work and, in doing so, struck O'Shea's vehicle. (R., Appellant's App., Vol. I at 31.) On March 20, 2002, the district court granted summary judgment to Osco, finding "no reasonable jury could conclude that Mr. Welch was acting within the scope of his employment" and therefore, Osco was not vicariously liable for his negligence. (*Id.* at 39.) O'Shea appealed. *See O'Shea v. Welch*, 350 F.3d 1101 (10th Cir. 2003).

Thereafter, O'Shea, Welch and Farmers entered into a "Consent to Judgment, Assignment and Covenant Not to Execute" in which Welch and Farmers stipulated to entry of judgment against Welch in an amount to be

-2-

determined by the court at trial.[1] After a bench trial, the district court entered judgment against Welch in the sum of $1,014,503.70.[2] O'Shea then filed the instant garnishment action against American Motorists Insurance Company (AMICO) seeking to recover any benefits applicable to Welch under the business auto policy AMICO issued to Osco. AMICO contested coverage. O'Shea and AMICO filed cross-motions for summary judgment. The district court denied O'Shea's motion and granted AMICO's motion; judgment was entered accordingly. This appeal followed. We exercise jurisdiction under 28 U.S.C. § 1291, AFFIRM in part and REVERSE in part.

## I.    AMICO's Motion to Dismiss, Remand or Stay Appeal

After the parties' briefs were filed, another panel of this Court issued a decision on O'Shea's appeal of the district court's summary judgement in favor of dismissal of Osco. *See O'Shea*, 350 F.3d 1101. In that decision, the panel concluded that the slight deviation rule applied in third-party liability cases in Kansas and ruled that whether Welch was acting within the scope of his

---

[1] In consideration of Welch's concession of liability, O'Shea agreed not to execute the judgment against Welch's personal assets.

[2] Pursuant to the "Consent to Judgment, Assignment and Covenant Not to Execute," neither Welch nor Farmers objected to any evidence introduced by O'Shea or presented their own evidence at the bench trial. As the district court stated, "the 'trial' was more akin to a default judgment hearing . . . ." (R., Appellant's App., Vol. I at 52). It also "question[ed] whether it would [have] arrive[d] at the same result in a true adversary proceeding . . . ." (*Id.*)

employment at the time of the accident is a fact question for the jury. *Id.* at 1105-1106. Consequently, the panel reversed the district court's judgment in favor of Osco and remanded the case for further proceedings. *Id.* at 1109.

As a result of the panel's decision, AMICO filed a motion to dismiss this appeal, or in the alternative, to remand or stay the appeal. We deny AMICO's motion. This case is a garnishment action which asks us only to interpret whether Welch is an insured under Osco's business auto policy. It is ripe for review because O'Shea has a judgment against Welch.[3] Additionally, a speedy resolution of this appeal will result in judicial efficiency. As discussed below, we interpret the policy to include Welch as an "insured" only if he was acting within the scope of his employment at the time of the accident. This is the same fact issue which was remanded for a jury determination by the previous panel. Accordingly, whether Osco is liable to O'Shea and whether Welch is an insured under the policy can be resolved in a single trial.

We now turn to the merits of this appeal.

## II.    Standard of Review

We review de novo a district court's grant of summary judgment, applying

---

[3] AMICO raises due process issues concerning this judgment. Specifically, it contends if Welch is found to be covered under the policy, then it should be allowed to contest damages. This issue will need to be addressed by the district court in the first instance.

the same legal standard used by the district court under FED. R. CIV. P. 56(c). *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182 (10th Cir. 1995). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "We consider the 'factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Rohrbaugh*, 53 F.3d at 1182-83 (quoting *Blue Circle Cement, Inc. v. Bd. of County Comm'rs.*, 27 F.3d 1499, 1503 (10th Cir. 1994)).

"A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997). Thus, Kansas law controls here. Because the interpretation of an insurance contract is a question of law in Kansas, *Marshall v. Kansas Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003), we review de novo. *Kaw Nation v. Springer*, 341 F.3d 1186, 1189 (10th Cir. 2003).

## III. Discussion

The sole issue on appeal is whether Welch is an "insured" under the business auto policy issued by AMICO to Osco. Both parties agree the pertinent policy language is in Amendatory Endorsement #5, which provides in relevant

part:

> It is agreed that the following is added to the LIABILITY
> COVERAGE, WHO IS AN INSURED provision[:]
>
> Who is an Insured is extended to include as an Insured any employee
> of the Named Insured while such employee is using his own
> automobile *in your business . . . .*

(R., Appellant's App., Vol. II at 426) (emphasis added). The district court determined this language extended coverage to an Osco employee only when that employee was using a personal vehicle within the scope of his or her employment. Based on its previous decision that Welch was not acting within the scope of his employment at the time of the accident, the district court concluded Welch was not an "insured" under the policy.

"An insurance policy is construed as to give effect to the intention of the parties." *Schartz v. Kansas Health Ins. Ass'n*, 66 P.3d 866, 869 (Kan. 2003). "If the language of an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used." *Marshall,* 73 P.3d at 130. An insurance policy is ambiguous when there is "genuine uncertainty as to which of two or more possible meanings is proper." *State Farm Mut. Auto. Ins. Co. v. Lane*, 961 P.2d 64, 68 (Kan. App. 1998) (quotations omitted). "Courts should not[, however,] strain to find an ambiguity where common sense demonstrates there is none." *Marshall*, 73 P.2d at 130. In interpreting a contract, the terms of a contract as a

-6-

whole must be considered, not individual provisions. *Id.* If any part of the policy is ambiguous, it is given the construction most favorable to the insured. *Schartz*, 66 P.2d at 869.

To determine whether Welch is covered under AMICO's policy to Osco, we begin with the policy's language.

Section II(A) of the policy provides in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of [any auto].

(R., Appellant's App., Vol. II at 415.) Under Section II(A)(1), the policy defines "Who Is An Insured." If Amendatory Endorsement #5 is added to the "Who Is An Insured" provision, it states:

> The following are "insureds":
>
> a. [Osco] for [any auto].
>
> b. Anyone else while using with [Osco's] permission [any auto] [Osco] own[s], hire[s] or borrow[s] except:
>
>> . . .
>>
>> 2) [Osco's] "employee" if [any auto] is owned by that "employee" or a member of his or her household.
>
>> . . .
>
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.
>
> [d.] [A]ny employee of [Osco] while such employee is using his own

automobile in [Osco's] business. . . .[4]

(R., Appellant's App., Vol. II at 415-16, 426.)

Welch is not an insured under Section II(A)(1)(a); O'Shea does not contend otherwise. Welch is also not an insured under Section II(A)(1)(b) or (c). Under Section (A)(1)(b), the "insured" is the permissive user of a vehicle owned, hired or borrowed by Osco. Here, Welch was driving his own vehicle, not a vehicle on loan to Osco. Therefore, he is expressly excluded as an insured under subsection (b)(2). Consequently, in order for Welch to be considered an insured under the policy, he must meet the requirements of Amendatory Endorsement #5; specifically, he must have been using his vehicle "in [Osco's] business" at the time of the accident.

The term "in your business" is not defined in the policy. The district court construed Amendment Endorsement #5 to apply only to situations in which Osco would be vicariously liable. O'Shea claims this was error, asserting Osco's vicarious liability is adequately insured by the language "[Osco] for [any auto]." (*Id.* at 415, Section II(A)(1)(a).) Because Osco can only act through its agents

_____

[4] For ease of reading, we have substituted policy definitions for certain words; our substitutions are indicated in brackets. For instance, we substituted "any auto" for "covered auto" because under the policy, "covered auto" means "any auto," the broadest possible definition of "covered auto" under the policy. (R., Appellant's App., Vol. II at 413-14.) We also changed "you" and "your" to "Osco." (R., Appellant's App., Vol. II at 414.)

and employees, O'Shea claims this provision covers Osco and its employees driving any vehicle, including the employee's own vehicle. Therefore, O'Shea contends Amendatory Endorsement #5 can only be construed to provide additional coverage beyond that already provided to Osco for its vicarious liability. That extension of coverage can only mean, according to O'Shea, that the policy provides personal coverage for Osco's employees, in this case Welch. He also claims the phrase "in your business" is ambiguous and should be construed in his favor.

We agree with O'Shea that the "[Osco] for [any auto]" language provides coverage for Osco's vicarious liability. Although Kansas corporations are legal entities which can sue and be sued, KAN. STAT. ANN. § 17-6102(2), the only way Osco can be deemed liable for "causing an 'accident'. . . resulting from the ownership, maintenance, or use of [any auto]" is through its agents and employees. (R., Appellant's App., Vol. II at 415.) Accordingly, and contrary to the district court's understanding, Amendatory Endorsement #5 does not provide any protection to Osco for its vicarious liability; it makes sense only if it provides something more. Its plain language makes employees "insureds" under the policy when they are using their own vehicles "in [Osco's] business." Therefore, Amendatory Endorsement #5 does not provide any additional protection to Osco but covers its employees using their personal vehicles in Osco's business.

That brings us to the crux of this case: what does "in your business" mean? Kansas has not answered; therefore, we interpret it as we believe the Kansas Supreme Court would. *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 775 (10th Cir. 1999) (in a diversity action, a court has an obligation to apply the applicable state law or, if such state's law is silent, rule as it believes that state's highest court would rule). We believe the Kansas Supreme Court would find "in your business" to be unambiguous and interpret it to mean "scope of employment." This construction of the policy is clearly what the contracting parties intended. By adding Amendatory Endorsement #5, Osco contracted to provide coverage for its employees when using their own vehicles. Obviously, however, it did not seek to provide global coverage for all employee negligence, only negligence occurring while the employees furthered Osco's business, which they can do only while acting within the scope of their employment. It is evident the base policy covers Osco for vicarious liability and Amendatory Endorsement #5 personally covers Osco's employees in those situations where Osco would be vicariously liable for their actions.

This interpretation is also consistent with that of courts from other states which have addressed the issue. These courts have found that "in your business" or "in connection with your business" is equivalent to "scope of employment." *See, e.g., Wausau Underwriters Ins. Co. v. Baillie*, 281 F.Supp.2d 1307, 1316

(M.D. Fla. 2002) ("in your business or your personal affairs" means "scope of employment"), *aff'd*, 82 Fed. App. 218 (11th Cir. 2003); *Lawler v. Fireman's Fund Ins. Co.*, 163 F.Supp.2d 841, 852-53 (N.D. Ohio 2001) (term "in connection with your business" is equivalent to "scope of employment"), *aff'd*, 322 F.3d 900 (6h Cir. 2003); *Bamber v. Lumbermens Mut. Cas. Co.*, 680 A.2d 901, 903 (Pa. Super. Ct. 1996) ("in connection with your business" is synonymous with "in the course of employment"); *Price v. Colony Ins. Co.*, 520 So.2d 964, 967 (La. App. 3 Cir. 1987) ("in connection with your business" is equivalent to the legal phrase "course and scope of employment").

Based on the above, the district court correctly interpreted "in your business" to mean "scope of employment." However, because it relied on its previous ruling that Welch was not acting within the scope of his employment at the time of the collision, which has been reversed, and because there are questions of fact as to whether Welch was acting in the "scope of his employment" at the time of the collision, as that term is defined by the previous panel's decision, this case is remanded to the district court for further proceedings consistent with this opinion.[5]

---

[5] O'Shea cites to Kansas workers compensation and permissive use cases in support of his argument that "in your business" should be read broadly, in particular, that the "slight deviation rule" should be applied to the facts of this case. Based on the previous panel's decision that Kansas would apply the slight deviation rule in third-party liability tort cases, which is the law of the case, we need not make any analogies to cases

-11-

## IV. Conclusion

We DENY AMICO's motion to dismiss this appeal, or in the alternative, to remand or stay the appeal. We AFFIRM the district court's interpretation of the policy but REVERSE its judgment in favor of AMICO. This case is REMANDED to the district court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

outside the tort arena. *See In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1258 (10th Cir. 2004) (law of the case doctrine states that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case).